UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LINDA JACKIE CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:08-CV- 513 |
| ) | (PHILLIPS/SHIRLEY) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff Linda Jackie Caldwell ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ") denying her benefits, which is the final decision of the Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 24, 2007, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), claiming a period of disability which began on January 22, 2007.[1] [Tr. 12]. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On May 22, 2008, a hearing was held before an ALJ to review

---

[1] Plaintiff initially claimed a period of disability beginning January 22, 2006. At her hearing before the ALJ, she amended her claim to specify an onset date of January 22, 2007.

Plaintiff's claim. [Tr. 22-34]. On September 11, 2008, the ALJ found that Plaintiff was not disabled. [Tr. 12-18]. The Appeals Council denied Plaintiff's request for review on November 17, 2008; thus the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-4]. Plaintiff now seeks judicial review of the Commissioner's decision.

## I.  ALJ FINDINGS

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the amended alleged onset of disability.

3. The claimant has an impairment considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to perform the full range of light work.

8. The claimant's past relevant work as a caregiver and housekeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

2

9. The claimant's medically determinable severe impairment does not prevent the claimant from performing her past relevant work as a caregiver and housekeeper.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(e) and 416.920(e)).

[Tr. 17-18].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

3

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.
>
> Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528. On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.   ANALYSIS**

On appeal, Plaintiff argues that substantial evidence did not support the ALJ's decision that she was not under a disability. Specifically, Plaintiff contends that the ALJ erred when determining her physical residual functional capacity ("RFC") by:

> (A) failing to accord greater weight to the medical opinions provided by Plaintiff's treating professionals at Heartland Medical, P.C.;
>
> (B) failing to give controlling weight to a medical report prepared in preparation for Plaintiff's ALJ hearing by certified Physician's Assistant ("PA-C") Teresa Rasmussen [Tr. 337-340]; and
>
> (C) failing to provide adequate justification for dismissing Plaintiff's testimony relating to pain.

Plaintiff also contends that the ALJ erred by finding that she did not have a severe mental impairment. Plaintiff argues that the ALJ ignored the medical opinions provided by her treating

5

providers and by the consultative state disability determination ("DDS") physician that indicated that she had a severe mental impairment.

The Commissioner, in response, contends that substantial evidence supported the ALJ's determination of Plaintiff's RFC. [Doc. 16]. First, the Commissioner argues that the ALJ gave proper weight to all medical opinions in the record. The Commissioner next argues that objective clinical data and the inconsistency of Plaintiff's self-reporting supported the ALJ's determination that Plaintiff's allegations of pain were not entirely credible. Finally, the Commissioner argues that no objective clinical data existed in the record to support a conclusion that Plaintiff had a severe mental impairment. The Commissioner concludes that substantial evidence supported the ALJ's determination that Plaintiff has the RFC to perform her past relevant work and therefore is not under a disability and not entitled to DIB and SSI payments.

### A. The ALJ properly considered the treatment notes that were recorded by doctors at Heartland Medical, P.C.

Plaintiff vaguely argues that the ALJ erred by failing to accord proper weight to opinions about her condition that were provided by employees of Heartland Medical, P.C. ("Heartland"). Plaintiff argues that these opinions "clearly demonstrate [her] ongoing chronic medical problems and pain." [Doc. 12 at 7]. In her memorandum, Plaintiff only cites three specific "opinions" provided by Heartland employees that she argues were not accorded proper weight by the ALJ. First, Plaintiff cites to the "Medical Decision & Original Orders" of Dr. George L. Day, M.D., dated November 10, 2003. [Tr. 206]. This document contains a section of "pertinent physical findings by physician" in which Dr. Day noted Plaintiff's self-report of back pain and then stated that Plaintiff "walks without assistance, but very stiffly and carefully" and that Plaintiff has "fairly good

6

range of motion." [Tr. 206]. Second, Plaintiff cites to the treatment notes of Dr. Aleona Oculam, M.D., dated August 12, 2004. [Tr. 207]. Dr. Oculam noted Plaintiff's self-report of back pain and then recorded that Plaintiff was suffering from "chronic low back pain with sciatica symptoms." [Tr. 207]. Third, Plaintiff cites to a "Dictation Sheet" (corresponding to a "Patient Encounter Form") signed by Dr. Lovie Stallworth, M.D., and dated March 13, 2006. [Tr. 227]. Dr. Stallworth noted Plaintiff's self-report of hand and foot pain and then recorded that Plaintiff was suffering from "bilateral hand pain, major depression, anxiety, and insomnia," that Plaintiff "ha[d] a good grip," and that there was "no evidence of any synovial thickening." [Tr. 227].

Plaintiff is correct that the three documents she cites do establish that she consistently complained of pain to her treating physicians at Heartland. The Court is not, however, persuaded that any of the documents contain significant medical opinions that should have controlled or heavily influenced the ALJ's determination of Plaintiff's RFC. When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or other acceptable medical source that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). The ALJ "must" give a medical opinion provided by a claimant's treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent with the other substantial evidence in the case record." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544; see 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ expressly considered all of the records of Plaintiff's treatment at Heartland. [Tr. 14]. To the degree that the treatment notes cited by Plaintiff can be considered

7

"medical opinions" at all, they are only opinions about the existence of physical symptoms and *not* opinions about the severity of Plaintiff's pain, the credibility of Plaintiff's complaints of pain, or the degree to which Plaintiff was limited by her pain. Accordingly, the doctors' treatment notes did not contain enough information to be considered medical opinions that were entitled to controlling weight. Even if the ALJ had expressly given controlling weight to the three documents cited by Plaintiff, these documents do not form a sufficient basis from which the ALJ could have discerned a consensus opinion held by Plaintiff's treating physician's at Heartland that Plaintiff either was or was not significantly limited in her functioning due to pain. The Court finds that the documents cited by Plaintiff were simply not very useful to the ALJ's task of determining Plaintiff's RFC. Nevertheless, the ALJ considered the three cited documents and all of the other treatment notes recorded by Heartland doctors. The Court concludes that the ALJ properly considered and accorded appropriate weight in his decisionmaking process to the treatment notes provided by doctors at Heartland when determining Plaintiff's RFC.

    **B.**    **The ALJ properly considered the opinion about Plaintiff's condition that was provided in a Medical Report prepared by Teresa Rasmussen, PA-C.**

Plaintiff argues that the ALJ erred when determining her RFC by failing to give controlling weight to a "Medical Report" completed by a physician's assistant at Heartland, Teresa Rasmussen, PA-C, on January 23, 2008. [Tr. 337-340]. Ms. Rasmussen's Report was prepared at Plaintiff's request in preparation for Plaintiff's hearing before the ALJ. The Report contains several opinions about the degree to which Plaintiff's medical condition limited her functioning. Significantly, the Report clearly states that Ms. Rasmussen's opinions about the degree to which Plaintiff was limited were supported by "[Plaintiff's] subjective complaint[s]" and "informal observation" and *not* by a

8

"formal functional analysis." [Tr. 339].

Ms. Rasmussen opined that Plaintiff could stand and/or walk for a total of 2 hours during an 8 hour work day, 15 minutes at a time. [Tr. 339]. She opined that Plaintiff could sit for a total of 2 hours during an 8 hour workday, 30 minutes at a time. [Tr. 339]. She also opined that Plaintiff could never "climb, balance, stoop, crouch, kneel, or crawl" and that Plaintiff's ability to reach, push or pull, handle, and feel objects was negatively affected by her medical condition. [Tr. 340]. Ms. Rasmussen' Report also records Plaintiff's *self-reporting* on the degree to which she was limited. For example, the Report states that "patient reports sometimes [being able to lift and/or carry] up to 20 pounds, [but] sometimes [lifting and/or carrying] a gallon of milk takes both hands." [Tr. 339]. Plaintiff argues that Ms. Rasmussen's Report was a medical opinion provided by a treating source that was entitled to controlling weight in the ALJ's decisionmaking process with regard to Plaintiff's RFC.

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). Other "acceptable medical sources" are licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a); 404.1502 ("acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about [a claimant's] impairments"). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment

9

and/or evaluation [that is] typical for the [treated condition(s)]." Blakley v. Comm'r of Soc. Sec., No. 08-6270, 2009 WL 3029653 at *1 (6th Cir. September 24, 2009) (quoting 20 C.F.R. § 404.1502). An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions).

In this case, the ALJ expressly considered the opinion of Ms. Rasmussen in his narrative decision, but he did not expressly indicate that he understood the opinion as having been provided by an "acceptable medical source." [Tr. 14, 15, 16]. The Court finds that Ms. Rasmussen was not an acceptable medical source of opinions about Plaintiff's condition. Ms. Rasmussen was a certified physician's assistant (PA-C), a professional health care position that is not included in the listing of "acceptable medical sources" contained in 20 C.F.R. § 404.1513(a). Accordingly, the Medical Report that Ms. Rasmussen completed on January 23, 2008, was *not* a "medical opinion" within the meaning of the regulations. See 20 C.F.R. § 404.1527(a)(2). Because Ms. Rasmussen's Report was not even a "medical opinion," it certainly was not a *treating* source medical opinion that would have been entitled to controlling weight.

The Court finds that Ms. Rasmussen was an "other source" of evidence of Plaintiff's condition. 20 C.F.R. § 404.1513(d)(1) (explicitly listing "physicians' assistants" as "other sources").

10

The ALJ was therefore permitted, but not required, to consider Ms. Rasmussen's Report when determining Plaintiff's RFC. See 20 C.F.R. § 404.1513(d) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, [an ALJ] *may* also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." (emphasis added)). The Court concludes that Plaintiff's characterization of Ms. Rasmussen as an acceptable treating medical source whose opinion was entitled to controlling weight is completely inaccurate.

The ALJ discussed Ms. Rasmussen's Report as follows:

> "The assessment of Ms. Rasmussen has been considered. However, Ms. Rasmussen indicated that the work-related limitations set out in the assessment were based solely upon [Plaintiff]'s subjective complaints and informal observations of [Plaintiff]. Ms. Rasmussen indicated that a formal functional analysis could be ordered if necessary. Ms. Rasmussen's assessment is not supported by her own objective clinical findings or diagnostic testing and is totally inconsistent with the objective evidence of record. Ms. Rasmussen reported on May 7, 2007 that [Plaintiff] is permanently disabled due to diabetic neuropathy. Such opinion is a decision reserved for the Commissioner. For the reasons set out above, Ms. Rasmussen's opinions are rejected."

[Tr. 16].

Because Ms. Rasmussen was an "other source," her opinions were not "medical opinions" and they were not entitled to any deference. The ALJ was free to evaluate the probative value of Ms. Rasmussen's opinion as he saw fit. The Court therefore finds that the ALJ's decision to reject the conclusions of Ms. Rasmussen's "Medical Report" was not improper.

### C. The ALJ's determination that Plaintiff's allegations of pain were not entirely credible was supported by substantial evidence.

Plaintiff weakly argues that the ALJ erred when determining her RFC by failing to

adequately justify his rejection of her testimony concerning pain. Plaintiff's memorandum states that "the ALJ summarily dismissed [Plaintiff]'s testimony without due consideration or adequate justification." [Doc. 12 at 8]. The Court disagrees.

Plaintiff's testimony at the May 22, 2008 hearing concerning pain was limited. Plaintiff testified that she had "nerve damage in her feet from the diabetes" and that she had "neuropathy" in her legs. [Tr. 27-28]. Plaintiff testified that the neuropathy in her legs and arthritis in her hip caused her to be unable to walk for more than 15 minutes at a time. [Tr. 28, 31]. Plaintiff also testified that her fingers, arms, and legs were affected with arthritis and that the pain from this was worse on the left side of her body than it was on the right side. [Tr. 29]. Finally, Plaintiff testified that "sometimes, taking a gallon of milk out of the refrigerator and sitting it on the table is painful" for her. [Tr. 31]. Plaintiff offered no other testimony at the hearing about suffering from what her memorandum characterizes as "disabling pain." [Doc. 12 at 8].

Plaintiff is correct that a DIB and SSI claimant is entitled to rely on his own testimony *in combination with* objective medical evidence to prove disabling pain. See Cohen v. Sec'y of Health and Human Servs., 964 F.2d 524, 529 (6th Cir. 1992) ("We recognize that '[a]n individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability.' A claimant, however, may rely in part on her own testimony *in combination with* objective medical evidence in order to establish that she is disabled." (quoting 42 U.S.C. § 423(d)(5)(A) (1988)) (emphasis added)). But Plaintiff cites no authority in support of what appears to be her argument that an ALJ is required, as a default position, to give controlling weight to a claimant's testimony regarding pain.

12

In this case, the ALJ documented Plaintiff's testimony relating to pain in his narrative decision:

> "[Plaintiff] testified that she stopped working due to stress, nerve damage in her feet, a back problem, difficulty controlling her blood sugar levels and neuropathy in her legs. She testified that she cannot walk for more than 15 minutes due to arthritis in her hip. [Plaintiff] stated that she can sit or stand for about two hours. She reported that lifting a gallon of milk is painful. She stated that she has arthritis throughout her body, particularly in her fingers and legs." [Tr. 13].

Given the ALJ's accurate recapitulation of Plaintiff's testimony and other self-reports, it is clear that Plaintiff's complaints of pain were not ignored. The Court finds Plaintiff's argument that the ALJ "disregarded," or did not give "due consideration" to, her testimony to be spurious. [Doc. 12 at 8].

The ALJ explained his decision to reject Plaintiff's testimony relating to pain as follows:

> "In assessing residual functional capacity, the ALJ has considered [Plaintiff]'s subjective allegations. The objective evidence fails to document an impairment or combination of impairments of such severity as would preclude work in the light range of exertion. [Plaintiff] told Dr. Page that she could walk one-quarter mile and carry 20 pounds for 20 feet without difficulty. While [Plaintiff] has decreased sensation in her feet, the record shows that she has good use of her feet and legs. The record further shows that [Plaintiff] has good use of her arms and hands and is able to move about in a satisfactory manner. The record fails to document an impairment or combination of impairments which would be expected to result in disabling pain. [Plaintiff] has not sought ongoing regular treatment for any of her symptoms. She has not required aggressive treatment for pain. She has not been referred to an arthritis specialist. She has not required hospitalization due to pain. No treating source has indicated that [Plaintiff] is totally disabled due to pain...[Plaintiff] told Dr. Nevils that she grocery shops, performs household chores and yard work, and fishes. Such activities are consistent with the light level of exertion. [Plaintiff]'s credibility is diminished by her lack of cooperation and pain behaviors exhibited during Dr. Page's examination. Based upon the foregoing, the ALJ concludes that [Plaintiff]'s allegations of disabling pain...are not supported by the record as a whole." [Tr. 16-17].

It is clear that the ALJ provided several reasons justifying his decision to discount Plaintiff's testimony and self-reporting about pain. The ALJ pointed out that Plaintiff's own complaints about the limiting effects of her pain were inconsistent. The ALJ also pointed out that Plaintiff did not offer her testimony and subjective complaints about pain *in combination with* objective medical evidence. Accordingly, the Court finds that the ALJ's decision to reject Plaintiff's testimony about pain as incredible was not improper. The Court also finds that the ALJ adequately documented justification for his conclusion that Plaintiff's testimony was incredible. The Court concludes that there was substantial evidence to support the ALJ's determination that Plaintiff's pain did not preclude her from light work.

> **D. The ALJ's determination that Plaintiff did not have a severe mental impairment was supported by substantial evidence.**

Plaintiff argues that the ALJ erred by finding that she did not have a severe mental impairment. Plaintiff specifically argues that "the ALJ ignored both the treating medical provider's opinion and the agency's own consultative examiner's opinion, and formed his own lay opinion that [Plaintiff] has no severe impairment." [Doc. 12 at 9]. In support of her argument that she has a severe mental impairment Plaintiff cites the following three documents in the record: (1) Teresa Rasmussen's Medical Report [Tr. 337-340], discussed *supra*; (2) the Mental Residual Functional Capacity Assessment ("MRFCA") and Psychiatric Review Technique ("PRT") prepared by DDS clinical psychologist Dr. Rebecca P. Joslin, Ed.D., on May 12, 2007 [Tr. 289-306]; and (3) examination notes prepared by DDS clinical psychologist Dr. Roy Nevils, Ph.D., on May 3, 2007 [Tr. 283-288]. [Doc. 12 at 9]. Before moving forward with its analysis, the Court first notes that, as fully explained *supra*, Ms. Rasmussen's Report was not a "medical opinion" that the ALJ was

14

required to consider.

At the second step of the sequential disability determination process used by the Social Security Administration ("SSA"), a claimant must establish that he has a severe physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. A physical or mental impairment is deemed "severe" when it significantly affects a claimant's "physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1521(a). When a claimant seeks to establish that he has a severe mental impairment, the ALJ must evaluate the claim using a special technique. 20 C.F.R. §§ 404.1520a; 416.920a.[2] Under the special technique, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment at all. 20 C.F.R. § 404.1520a(b). If the ALJ determines that the claimant has a medically determinable mental impairment, he must then rate the degree of functional limitation resulting from the impairment based on the extent to which the impairment interferes with the claimant's four "functional areas." 20 C.F.R. § 404.1520a(c).

The four "functional areas" listed in the regulations are (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ must rate the degree to which the claimant is limited in each of the four areas. Id. The ALJ must rate the degree of the claimant's limitation in the first three areas (activities of daily living; social functioning; and concentration, persistence, or pace) on a five-point

---

[2] The regulations found in 20 C.F.R. §§ 404.1520a and 416.920a are parallel and substantively identical. For convenience, the Court will cite only to the former throughout the remainder of this Report and Recommendation.

scale. 20 C.F.R. § 404.1520a(c)(4). The five points on the scale are "none, mild, moderate, marked, and extreme." Id. The ALJ must rate the degree of the claimant's limitation in the fourth area, episodes of decompensation, on a scale with four points: "none, one or two, three, four or more." Id. The last point on both the five-point scale and the four-point scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. Id.

After the ALJ rates the degree of the claimant's functional limitations in each of the four areas, he must determine the severity of the claimant's mental impairment using the technique outlined in 20 C.F.R. § 404.1520a(d). The ALJ must determine whether the claimant's mental impairment is "severe" or "not severe." See 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). If the ALJ determines that the claimant's impairment is severe, he must next determine whether it meets or is equivalent to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the ALJ determines that the claimant's severe impairment does not meet or equal a listed mental disorder, then he must assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3).

In this case, the ALJ determined that Plaintiff did have "medically determinable" mental impairments.[3] See 20 C.F.R. § 404.1520a(b). Next, the ALJ expressly considered the degree of functional limitation resulting from Plaintiff's mental impairments based on the extent to which the

---

[3] While the ALJ did not make an explicit finding that Plaintiff had medically determinable mental impairments, he did refer to "the claimant's mental impairments" when stating his conclusion. [Tr. 15]. The Court therefore finds that a determination that Plaintiff had medically determinable mental impairments was implicit in the ALJ's decision.

16

impairments interfered with Plaintiff's four functional areas. [Tr. 15]. Then, because he found that Plaintiff's limitations with respect to (1) activities of daily living and (2) social functioning were "no greater than mild" and because he found that there was "no objective evidence" that Plaintiff had any limitations at all with respect to (3) concentration, persistence, or pace, and (4) episodes of decompensation, the ALJ concluded that Plaintiff did not have a severe mental impairment. [Tr. 15]; see 20 C.F.R. § 404.1520a(c)(3) and (d)(1). The Court wholeheartedly disagrees with Plaintiff's contention that the ALJ improperly "formed his own lay opinion that [Plaintiff] has no severe impairment." [Doc. 12 at 9]. The Court finds that the ALJ faithfully followed the procedure dictated by the regulations. The Court also especially commends the ALJ for the thoroughness with which he documented his analysis of Plaintiff's mental condition under 20 C.F.R. § 404.1520a.

The Court finds Plaintiff's specific argument that the ALJ improperly ignored both the MRFCA and PRT prepared by Dr. Joslin [Tr. 289-306] and the examination notes prepared by Dr. Nevils [Tr. 283-288] to be without merit. The ALJ expressly mentioned Dr. Nevils's evaluation many times in his narrative decision. [Tr. 14, 15]. Dr. Nevils concluded that Plaintiff "is moderately withdrawn from social interactions" and that she had "no limitations with respect to memory, concentration, or adaptability due to mental disorder." [Tr. 286]. The Court finds that the ALJ's determination that Plaintiff's mental impairments were not severe is in no way inconsistent with Dr. Nevils's conclusions.

The ALJ did not expressly mention the MRFCA and PRT prepared by Dr. Joslin in his narrative decision. Dr. Joslin indicated on the MRFCA that Plaintiff was "not significantly limited" in understanding and memory, sustained concentration and persistence, or adaptation. [Tr. 289-290]. Dr. Joslin indicated that Plaintiff was "moderately limited" in only two areas: her ability to interact

17

appropriately with the general public and her ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes. [Tr. 290]. On the PRT, Dr. Joslin indicated that Plaintiff had two medically determinable impairments: adjustive disorder with depressed mood and anxiety disorder. [Tr. 293, 296, 298]. Dr. Joslin also indicated that Plaintiff had no episodes of decompensation, mild restriction of activities of daily living, mild difficulties in maintaining concentration, persistence, and pace, and moderate difficulties in maintaining social functioning. [Tr. 303].

Dr. Joslin's conclusions differ from the ALJ's findings in only two respects. First, Dr. Joslin concluded that Plaintiff experienced mild difficulties in maintaining concentration, persistence, and pace, but the ALJ found that there was "no objective evidence" that Plaintiff had any limitations at all with respect to concentration, persistence, or pace. [Tr. 15]. The Court finds that there is no conflict between Dr. Joslin's conclusion and the ALJ's finding because Dr. Joslin did not provide any objective evidence that supported her conclusion that Plaintiff experienced mild difficulties. In fact, Dr. Joslin noted that Plaintiff gave attention to her appearance and hygiene and that Plaintiff "could recall three items out of three after delay," could "spell 'world' backwards," could "abstract orange and banana," could identify the current president, and was familiar with current news events. [Tr. 305]. The ALJ could have properly relied on these notes to support his finding that Plaintiff did not have any limitations at all with respect to concentration, persistence, or pace.

Second, Dr. Joslin concluded on the PRT that Plaintiff had moderate difficulties in maintaining social functioning while the ALJ found that Plaintiff's limitations with regard to social functioning were "no greater than mild." [Tr. 15, 303]. The Court acknowledges that Dr. Joslin's conclusion on the PRT conflicts with the ALJ's finding. However, the Court notes that Dr. Joslin

18

indicated on the MRFCA that Plaintiff was "not significantly limited" in three of the five categories of social interaction. [Tr. 290]. The Court finds that the ALJ was properly acting within his "zone of choice" when he relied upon the MRFCA prepared by Dr. Joslin instead of the PRT prepared by Dr. Joslin. See Buxton, 246 F.3d at 773.

The Court finds that Dr. Joslin's conclusions on the MRFCA and the PRT, taken together, are not inconsistent with the ALJ's determination that Plaintiff's mental impairments were not severe. Accordingly, the Court rejects Plaintiff's allegations of error. The Court concludes that the ALJ's determination that Plaintiff's mental impairments were not severe was supported by substantial evidence.

## V.     CONCLUSION

Plaintiff's memorandum is essentially a broad argument that the cumulative weight of all of the evidence in the record supports a finding that Plaintiff does not have the RFC to work. Plaintiff basically contends that the ALJ reached an incorrect substantive conclusion about her mental RFC. Plaintiff does *not* clearly argue that there was insubstantial evidence upon which to base that conclusion. The Court reiterates that the fact that Plaintiff's record may possess substantial evidence to support a different conclusion than that reached by the ALJ, or that the Court itself might have decided Plaintiff's case differently, is irrelevant. See Crisp, 790 F.2d at 453 n.4. It is not the Court's place to reweigh the evidence contained in the record to make its own determination of Plaintiff's RFC. See Longworth, 402 F.3d at 595. Instead, the Court must only look to see that substantial evidence existed for the determination that was made by the ALJ.

19

The Court concludes that substantial evidence supported the ALJ's determination that Plaintiff had the RFC to perform her past relevant work. For the foregoing reasons, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).